UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
In re:

THE PROGRESS GROUP, LLC, Case No. 09-24403 (RDD)

Debtor

Chapter 11

---------------------------------------------------------- X

**EMERGENCY MOTION OF GRAND PACIFIC FINANCE CORP. FOR AN ORDER (i) GRANTING RELIEF FROM THE AUTOMATIC STAY TO TERMINATE THE CONTRACT, OR (ii) COMPELLING THE DEBTOR TO REJECT THE CONTRACT OR (iii) DISMISSING THE CHAPTER 11 CASE**

TO: THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Grand Pacific Finance Corp. ("Grand Pacific"), by and through their undersigned counsel, hereby moves this Court (the "Motion") for entry of an order (i) granting Grand Pacific relief from the automatic stay imposed by 11 U.S.C. § 362 to terminate a contract with The Progress Group, LLC ("Progress Group" or the "Debtor") alternatively, (ii) compelling the Debtor to immediately reject the contract pursuant to 11 U.S.C. § 365(d)(2); or (iii) dismissing the case for bad faith pursuant to 11 U.S.C. 1112(b). In support of this Motion, Grand Pacific respectfully states as follows:

**PRELIMINARY STATEMENT**

1. This Chapter 11 case was filed by the Debtor as a last-ditch – and as explained herein, futile - attempt to salvage a transaction to purchase certain real estate from Grand Pacific pursuant to a Purchase and Sale Agreement (the "Agreement"). At the proverbial eleventh hour before the "time of the essence" closing date- December 23, 2009, the Debtor filed its Chapter 11

petition because it did not have sufficient funds to close the transaction. The closing date had previously been pushed back once, at the Debtor's request. Given the precarious state of the real estate market, the value of the property is deteriorating in rapid fashion. It consists of the half finished building which is sitting dormant. No work is being done and the property is deteriorating. In addition Grand Pacific took out a $678,822.49 letter of credit with the town of Rhineback and is now in a position of the town drawing down on the letter of credit or in the alternative insisting that Grand Pacific increased the amount of the letter of credit. Therefore, any further delay in closing of the transaction will result in economic detriment to Grand Pacific.

2. The Debtor has provided Grand Pacific with no assurances that it has the wherewithal to close the transaction. As a result, Grand Pacific has attempted to locate another buyer of the loans - and has now found a buyer that is ready, willing and able to complete the transaction. However, despite the Debtor's undisputed material breach of the Agreement (by failing to close on the closing date), the overhang of this Chapter 11 case has precluded Grand Pacific from proceeding with this buyer.

3. In an affidavit filed with its petition, the Debtor states that it commenced this Chapter 11 case "in order to exercise its rights under sections 365 and 108(b) of the Bankruptcy Code." The Debtor has no such rights. When the Debtor failed to close the transaction on December 23, 2009 it breached the Agreement. Under New York law (which governs the Agreement), failure to close a transaction on a "time of the essence" closing date is a material breach that terminates the breaching party's ( here, the Debtor's) rights to enforce the contract. Because of this, Grand Pacific submits that the Debtor has no continuing property interest in the Agreement, and therefore it is free to deem the Agreement terminated and proceed to close with a new buyer without further order of this Court.

4. However, in an abundance of caution, Grand Pacific filed this Motion seeking relief from the automatic stay to terminate the Agreement or, alternatively, an order compelling the Debtor to immediately reject the agreement. Even assuming that the Agreement has not yet terminated on account of the Debtor's material breach (which it has), Bankruptcy Code sections 365 and 108(b) give the Debtor no shelter from the consequences of that material breach. The debtor's failure to close the transaction by the time of the essence closing date was a non-monetary default and, because that default is based on a so-called "historical fact," it is impossible to cure. Because the Debtor cannot cure the default, it cannot assume the Agreement under section 365. Likewise, while section 108(b) provides a 60-day "grace period" for the Debtor to cure a default under a contract, that grace period is meaningless here, where the default is incurable.[1]

5. For the foregoing reasons, as more fully discussed herein, the Court should grant Grand Pacific's relief from the automatic stay to terminate the Agreement or, alternatively, compel the Debtor to immediately reject the Agreement. The debtor has no further rights under the Agreement, and the Bankruptcy Code does not change the result. Put simply, the Bankruptcy Code does not permit the Debtor to use the bankruptcy process to hold Grand Pacific hostage, especially where, as here, it has no hope of obtaining any benefits from the Agreement and

[1] Notably, the Agreement itself provides no grace period for closing. Because the agreement included an express "time of the essence" provision, if the Debtor did not close on December 23, 2009, it relinquished all rights under the agreement.

Grand Pacific will suffer economic detriment if precluded from promptly closing with another buyer. [2] The Motion should therefore be granted.

## JURISDICTION AND VENUE

6. This Court has jurisdiction to hear and decide the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

8. On December 23, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. (The "Bankruptcy Code"). The Debtor remains in possession of its assets and continues to operate its business as a debtor-in-possession pursuant to sections 1107 and 1109 of the Bankruptcy Code. An official committee of unsecured creditors has not yet been appointed in this Chapter 11 case.

9. Grand Pacific and Pinches Braun entered into an Agreement for an assignment of a foreclosure bid dated August 21, 2009 (See Exhibit 'A'). Pursuant to the terms of that agreement Pinches Braun agreed to assign and sell to the Debtor and the Debtor agreed to accept assignment of and relief from Grand Pacific's successful foreclosure bid affecting the premises know as "The Gardens at Rhinebeck Phase I and Phase II (the "premises") which are more particularly described in the Agreement.

10. Pursuant to the terms of the agreement and subsequent notices sent pursuant

[2] Grand Pacific reserves all rights, claims and remedies against the Debtor, including but not limited to the right to see dismissal of this chapter 11 case pursuant to 11 U.S.C. § 1112(b) on the ground that it was filed in bad faith.

thereto, the closing date for the sale of the assignment of the bid was scheduled for September 23, 2009 with time being of the essence as to Purchaser. Sometimes subsequent to the entry of that agreement Pinches Braun assigned his interest to the Progress Group. Grand Pacific was never advised of this assignment.

11. The closing did not take place on December 23, 2009 as scheduled pursuant to the terms of the agreement.

12. Subsequent to September 23, 2009 Grand Pacific advised the Pinches Braun in writing that Grand Pacific deemed Pinches Braun in default of the obligations under the agreement and that Grand Pacific would retain the $375,000.00 deposit as and for liquidated damages as well as the $135,000.00 extension fee (See Exhibit 'B').

13. Pursuant to a subsequent agreement between Grand Pacific and the Pinches Braun on November 18, 2009 the parties agreed to extend the closing date from September 23, 2009 to December 23, 2009 with "time being of the essence" for the Debtor to close on such date. The Agreement clearly says that Grand Pacific will not consider any further extensions of the closing date (See Exhibit 'B').

14. On December 23, 2009 as a last ditch effort to further extend their time to close and notwithstanding the prior agreements, Progress Group, LLC (the "Debtor"), as assignee of Pinches Braun filed a petition under Chapter 11 of the United States Bankruptcy Code and the United States Bankruptcy Court for the Southern District of New York.

15. By this Motion Grand Pacific seeks the entry of an order pursuant to Sections 362(d), 365(d)(2) 1112(b) of the Bankruptcy Code and Bankruptcy Rules 4001, 6006, 9014 and Local Rules 4001-1, 6006-1 granting Grand Pacific relief from the automatic stay to

exercise its right to terminate the Agreement, and compelling the Debtor to reject the agreement or dismissing the Chapter 11 petition.

## BASIS FOR RELIEF

### I. The Debtor's Breach of the Time of the Essence Clause Terminated The Agreement, And Therefore it Cannot Be Assumed.

16. As a threshold matter, the Agreement terminated when the Debtor failed to close the sale on December 23, 2009 – the Closing Date set by the November 8, 2009 amended Agreement. As noted above the Agreement – and all amendments thereto – specifically declared that time was of the essence. New York law governs the Agreement. See Agreement at ¶ 8.2. Under New York law, a party's failure to perform under a contract declaring time to be of the essence is a material breach. See New Colony Homes, Inc. V. Long Island Prop.Group, LLC, 21 A.D.3d 1072, 1073, 803 N.Y.S. 615 (2d Dep't 2005) ("where time is of the essence, performance on the specified date is a material element of the contract, and failure to perform on that date constitutes, therefore a material breach of the contract"). Moreover, that material breach terminates – or effectively terminates – the contract. Rhodes v. Astro-Pac, Inc., 51 A.D.2D 656, 378 N.Y.S.2d 195 (4th Dep't 1976) (where parties filed to close by time of the essence closing date, "the contract was at an end"); In re Southold Dev.Corp., 134 B.R. 705, 708-710 (E.D.N.Y. 1991) (finding that the contract terminated when the parties failed to close on a time of the essence closing date); see also In re New Breed Realty Enters., 278 B.R. 314, 322-23 (Bankr.E.D.N.Y. 2002) (holding that party's failure to close by time of the essence date term is material breach of contract, entitling non-breaching party to terminate contract). Notably, the fact that the Debtor has filed a Chapter 11 petition does not prevent termination of the Agreement. See In re Trigg, 630 F.2d 1370, 1373 (10th Cir. 1980) ("A contract that provides for

termination on the default of one party may terminate under ordinary principles of contract law even if the defaulting party has filed a petition under the Bankruptcy Act.")

17. It is well settled law that a debtor cannot assume a contract under section 365 if the contract has already terminated or expired. See In re Balco Ltd., 312 B.R. 734, 750 (Bankr. S.D.N.Y. 2004) ("it is well settled that events after the filing of the bankruptcy petition may cause the contract to be regarded not as an executory when the motion to assume or reject was made, such as contracts which expired post-petition by their own terms after the date of the petition but before the motion was heard") (quoting In re Child World, Inc., 147 B.R. 847, 852 (Bankr.S.D.N.Y. 1992)); In re Texscan Corp., 107 B.R. 227, 230 (B.A.P.9th Cir. 1989)("It is axiomatic that before 11 U.S.C. § 365 can apply a contract must exist. If a contract has expired by its own terms then there is nothing left to assume or reject."). In other words, the Bankruptcy Code cannot revive a contract that has already terminated.

18. Since the Debtor's breach of the time of the essence clause in the Agreement terminated its right to enforce the Agreement, the Debtor is precluded from assuming the Agreement under section 365. Moreover, because the Debtor has no further rights under the Agreement, the estate has no interest in the Agreement pursuant to section 541 of the Bankruptcy Code. As such, Grand Pacific submits that it need not seek relief from this court to deem the Agreement terminated and enter into a contract with another buyer. However, in an abundance of caution, Grand Pacific files this Motion seeking relief from the automatic stay or, alternatively, an order compelling the Debtor to reject the Agreement.

## II. Even If The Agreement Has Not Formally Terminated, There Is Cause To Lift The Automatic Stay To Allow Grand Pacific To Terminate The Agreement.

19. Even assuming that the Agreement has not terminated, Grand Pacific is entitled to relief from the automatic stay to terminate it. Section 362(d) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section ... for cause." 11 U.S.C. § 362(d)(l). Courts in this district have recognized that a debtor's inability to assume a contract constitutes "cause" for relief from the automatic stay under Bankruptcy Code section 362(d)(1). See Bell v. Alden Owners, 199 B.R. 451, 462 (S.D.N.Y. 1996); In re G.S.V.C.. Restaurant Corp., 10 B.R. 300 (S.D.N.Y. 1980). Here, cause plainly exists for relief from the automatic stay because the Debtor cannot cure its defaults under the Agreement and, therefore, cannot assume the Agreement under section 365 of the Bankruptcy Code.

20. There can be no dispute that the Debtor breached the Agreement when it failed to close the loan purchase on the Closing Date. Moreover, as discussed above, because the Agreement included an express "time of the essence" clause, that breach was material. Section 365(b)(1 )(A) of the Bankruptcy Code provides that a trustee (or, in this case, the Debtor), subject to limited exceptions not applicable here,[3] can only assume a contract if it cures all existing defaults. The Debtor's failure to close the loan purchase by the time of the essence

---

[3] Section 365(b)(2) provides that a default that is a breach of a provision relating to the following do not need to be cured: (a) the insolvency or financial condition of the debtor; (b) the commencement of a bankruptcy case; (c) the appointment of a trustee or custodian; or (d) the satisfaction of any penalty rate or penalty provision relating to a nonmonetary default. None of these exceptions apply here.

Closing Date is a non-monetary default. And, because the failure to close on the Closing Date is a "historical fact," that default cannot be cured.[4]

21. In re New Breed Realty Enters., 278 B.R. 314 (Bankr. E.D.N.Y. 2001) is directly on point and dispositive here. In that case, the Bankruptcy Court for the Eastern District of New York granted relief from stay to a seller of stock of a corporation owning real property, where the debtor failed to close by the sale date and the contract included a time of the essence clause. The Court held that the debtor's failure to close the sale on or before time of the essence closing date constituted a non-monetary default which could not be cured, and therefore the sale contract could not be assumed. See New Breed, 278 B.R. at 320-25; see also In re Eagle Creek Subdivision, LLC, 397 B.R. 758, 764-65 (Bankr. E.D.N.C. 2008) (debtor's inability to complete work on lots in development project by date specified in a contract constituted a material and nonmonetary default incapable of cure).[5] Because of the inclusion of time of the essence clause in the Agreement, the default arising from failure to close on the Closing Date is not "monetary"

---

[4] Prior to the 2005 Bankruptcy Code amendments, the language of Section 365(b)(2) was ambiguous as to whether it exempted all nonmonetary defaults from the cure requirement, or whether the exemption only applied to penalty provisions triggered by nonmonetary defaults .The 2005 Bankruptcy Code amendments modified the language of Section 365(b)(2)(D) to make clear that it excepts from the cure requirement only penalty provisions relating to non-monetary defaults, but not non-monetary defaults themselves.

[5] In In re Walden Ridge Dev., LLC, 292 B.R. 58,67 (Bankr. N.J. 2003), the Bankruptcy Court for the District of New Jersey characterized the debtor's failure to close under a time of the essence contract to be a monetary default, and thus capable of cure. The Walden Ridge court did not

and cannot be cured by payment of the Purchase Price at a later date.[6]

22. Here, the time of the essence provision in the Agreement is not simply boilerplate – it has very real importance and meaning to this transaction because the value of the Assets is deteriorating, almost by the day. This Chapter 11 case was occasioned solely by the fact that the

---

explain its rationale, other than to state: "This Court does not follow the lead of New Breed in characterizing the failure of a buyer to pay the purchase price under an executory contract as a non-monetary default. Such default simply does not equate to the 'historical fact' default in the automobile franchise cases which may be characterized as non-monetary." Id. Moreover, the Court noted that the non-debtor counterparty to the sale contract would not suffer economic harm, as the Debtor was in a position to close the transaction. Here, as in New Breed, Grand Pacific will suffer economic harm if it is unable to promptly sell the Assets to another buyer. For those reasons, Grand Pacific submits that, aside from being a decision of a court outside of the Second Circuit, Walden Ridge should not be followed here.

[6] Grand Pacific notes that some courts have applied a rule that where a non-monetary default is based on historical fact and not curable, the debtor is precluded from assuming an executory court only if the default is material or causes "substantial economic detriment." See,, e.g., In re Joshua Slocum Ltd., 922 F.2d 1081, 1092 (3d Cir. 1990). Even if that rule is applicable here, it does not save the Debtor. The Court in New Breed specifically held that because breach of a time of essence provision was a material default under New York law, that breach could not be excused. See New Breed Realty Enters., 278 B.R. at 322-23.

Debtor did not have the wherewithal to close the transaction, and the Debtor concedes it is seeking to use the bankruptcy process as a delay tactic in a desperate attempt to buy time. However, Grand Pacific has been given no assurances that the Debtor has any ability to obtain the funds necessary to close, and therefore would be substantially prejudiced if, on account of the automatic stay, it was precluded from proceeding to close with another buyer. The Bankruptcy Code does not permit a debtor to hold a contract counterparty hostage, where the debtor has no continuing rights under, and therefore cannot derive any economic benefit from, the contract. See In re Muniz, 1999 U.S. Dist. LEXIS 4060, at *12-14 (S.D.N.Y. Mar. 29,1999) (cause exists to lift the stay where the debtor abuses the bankruptcy process to frustrate the rights of creditors). Therefore, to the extent the automatic stay applies, there is plainly cause to lift the stay to allow Grand Pacific to terminate the Agreement and close with another buyer. Likewise, and for the same reasons, there is also cause for entry of an order compelling the Debtor to immediately reject the Agreement pursuant to section 365(d)(2).

## III. Section 108(b) of the Bankruptcy Code Does Not Give The Debtor The Right To Extend The Closing Date An Additional 60 Days.

23. The Debtor will likely assert that section 108(b) of the Bankruptcy Code applies so as to extend the time for it to close the transaction by 60 days. Section 108(b) provides:

> Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of-
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 60 days after the order for relief.

11 U.S.C. § 108 (b).

24. As an initial matter, section 108(b) cannot apply to extend the period of time to perform under a contract if that contract has already terminated. See, e.g., In re Durability, Inc., 273 B.R. 647, 662-63 (Bankr. N.D. Okla. 2002) (section 108(b) not applicable where insurance policy lapsed by its terms). As discussed above, when the Debtor failed to close the transaction on the time of essence date, that constituted a material breach which terminated (or effectively terminated) the Agreement. Because the Agreement has already terminated, section 108(b) is not applicable here.

25. Even if section 108(b) applies here, it still does not aid the Debtor. The relevant language of section 108(b) provides for an extension of time to "cure a default." Here, the default is the breach of the time of the essence provision which, as discussed above, is an incurable default. Thus, even if section 108(b) applies (which is not the case), the fact that the Debtor has an additional 60 days to attempt to cure that default is meaningless.

26. Grand Pacific anticipates that the Debtor will assert that section 108(b) extends the Closing Date an additional 60 days from December 23, 2009, but that position is unfounded. The statute makes reference to extension of the date to "cure a default" under a contract, but nowhere does it provide for a rewriting of other terms of the contract - here, the "time of the essence" closing date. Indeed, other provisions of the Bankruptcy Code demonstrate that where Congress intended to alter contractual rights, it knew how to expressly provide for such alteration. See, e.g. 11 U.S.C. § 365(e)(l) *("notwithstanding a provision in an executory contract or unexpired lease,"* an executory contract or unexpired lease may not be terminated or

modified *"solely because of a provision in such contract or lease that is conditioned on"* insolvency or financial condition of the debtor, the commencement of a bankruptcy case, or the appointment of a trustee or custodian"); § 1111 (b)(1 )(A) ("a claim secured by a lien on property of the estate shall be allowed or disallowed ...*the same as if the holder of such claim had recourse against the debtor*

*on account of such claim, whether or not such holder has such recourse . . . ")* (emphasis supplied).

27. Therefore, except as expressly carved out in the Bankruptcy Code, a debtor is held to the terms of its bargain in its pre-petition contractual arrangements - which, in this case, includes a specifically negotiated and agreed to time of the essence closing date. Put another way, section 108(b) does not permit a contract party to file a bankruptcy petition moments before "time of the essence" performance is due, and then rewrite the date of performance. If that were the case, it would render the counterparty's reliance on a time of the essence clause meaningless, and turn the notion of commercial expectation on its head. Notably, the legislative history of section 108(b) indicates that the statute was intended to provide the debtor additional time to file legal documents subject to a deadline (such as pleadings, claims, and notices), and makes no reference to modification of contractual terms. See S. Rep. No. 989, 95th Cong., 2d Sess. 30, *reprinted in,* 1978 U.S. Code Congo & Admin. News 5787,5816. ("Subsection (b) [of section 108] gives the trustee two months to take other actions, not covered under subsection (a), *such as filing a pleading, demand, notice, or proof of claim or loss (such as an insurance claim),* unless the period for doing the relevant act expires later than two months after the date of the order for relief.") (emphasis supplied); see also MHI Shipbuilding. L.L.C. v. Nat'l Fire Ins. Co., 286 B.R.

16, 26 (D. Mass. 2002) ("the purpose of Section 108(b) is to extend other time limits such as filing a pleading, demand, notice, or insurance claim").

28. Good Hope Refineries. Inc. v. Benavides, 602 F.2d 998 (lst Cir. 1979), cert. denied, 444 U.S. 992 (1979), is also instructive here. In Good Hope, the First Circuit held that section 11 (e) of the Bankruptcy Act - the predecessor to § 108(b) - did not extend the date for renewal of an option contract. In its decision, the First Circuit stated as follows:

> If the debtor has committed, or the trustee commits, an incurable breach, the trustee has no continuing rights under the contract...It would be anomalous indeed if section 11 (e), a provision dealing mainly with suits and claims by the trustee, could be used to *alter contractual rights substantially where time is of the essence and the debtor or the trustee has defaulted.*

Id. at 1003 (internal citation omitted) (emphasis supplied). Thus, in Good Hope, the First Circuit recognized that the predecessor to § 108(b) could not aid the debtor where it has committed an incurable breach - and specifically referenced breach of a time of the essence provision. In contrast, in those cases applying section 108(b) to grant the debtor a 60 day extension to pay the purchase price due under a contract, a time of the essence provision was not at issue. See, e.g. In re Benge Com., 54 B.R. 226, 228 (Bankr. D. Haw. 1985); In re Mellen, 79 B.R. 385, 387 (Bankr. N.D. Ill. 1987). Thus, where the contractual default is failure to pay the purchase price, section I08(b) grants the Debtor a 60-day grace period to cure that *monetary* default – but where, as here, the contractual default is failure to close by a time of the essence date, that *nonmonetary* default is incurable and the grace period of section 108(b) cannot be used to rewrite the closing date.[7]

[7] In New Breed, the Court tangentially noted that if section 108(b) was applicable, the date of closing may have been extended an additional 60 days. 278 B.R. at 318. However, the Court did not decide whether in fact section 108(b) applied. The issue was not relevant because the 60 day

29. Section 108(b) does not extend the time of the essence closing date in the Agreement an additional 60 days. Therefore, the Motion should be granted.

**IV. The Petition Should be Dismissed for Bad Faith Pursuant to Section 1112(b) of the Bankruptcy Code**

30. It is clear that this bankruptcy petition was filed notwithstanding there was no reasonable likelihood that the Debtor intended to reorganize and no reasonable possibility that it would eventually emerge from the bankruptcy proceeding. The factors for which a bankruptcy case should be dismissed are found in section 11 U.S.C. 1112(b). That list is illustrative but not exhaustive. The factors for dismissal are set forth in Pleasant Pointe Apartments Ltd. vs. Kentucky Hous.Corp. 139 B.R. 828 (W.D. Ky.1992). The Court in Pleasant Pointe considered the following factors are indicative of a bad faith filing:

> (1) the debtor has only one asset;
>
> (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
>
> (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
>
> (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in

---

period had already elapsed at the time the motion for relief from stay was filed. As such, Grand Pacific submits that New Breed's discussion in *dictum* regarding section 108(b) is not probative here.

> the pending state foreclosure action;
>
> (5) The timing of the debtor's filing evidences intent to delay or frustrate the legitimate effort of the debtor's secured creditors to enforce their rights;
> (6) the debtor has little or no cash flow:
>
> (7) the debtor can't meet current expenses including [**20] the payment of personal property and real estate taxes; and
>
> (8) the debtor has no employees.

31. The record is sufficiently well developed to allow the Bankruptcy Code to draw the necessary inferences to dismiss this case <u>See, e.g.</u> <u>Oneida Motor Freight Inc.v. United Jersey Bank</u> 848 F2d. 414.

**<u>REQUEST FOR WAIVER OF 10-DAY STAY UNDER FED. R. BANKR. P. 4001(a)(3)</u>**

32. As set forth herein, Grand Pacific may suffer economic harm if it is unable to obtain prompt relief. Accordingly, under the circumstances, Grand Pacific hereby requests that the Court waive the 10-day stay of an order granting relief from the automatic stay imposed by Fed. R. Bankr. P. 400 1(a)(3).

**<u>WAIVER OF MEMORANDUM OF LAW</u>**

33. This Motion includes citations to the applicable authorities and a discussion of their application to this Motion. Accordingly, Grand Pacific respectfully submits that such citations and discussion satisfy the requirement that a party submit a separate memorandum of law in support of a motion pursuant to Rule 90 13-1 (b) of the Local Bankruptcy Rules for the Southern District of New York.

**NO PRIOR REQUEST**

34. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, Grand Pacific Finance Corp. respectfully requests that this Court enter an Order, (a) granting the Motion, (b) granting Grand Pacific Finance Corp. relief from the automatic stay to terminate the Agreement or (c) compelling the Debtor to immediately reject the Agreement, or (d) dismissing the Chapter 11 petition and granting Grand Pacific Finance Corp. such other and further relief as is appropriate under the circumstances.

Dated: January 4, 2010
Brooklyn, New York

LAW OFFICE OF GREGORY MESSER

***/s/ Gregory Messer***

___________________________________

Gregory Messer (GM#7539)
26 Court Street
Suite 2400
Brooklyn, New York 11242
Telephone: (718) 858-1474
Facsimile: (718-797-5360